UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| CATHLEEN Z. McDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-90 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to supplemental security income (SSI) benefits. Plaintiff filed her application for SSI benefits on March 20, 2007, alleging an onset of disability as of that date. (A.R. 30). Her claim was denied on initial review. (A.R. 88-95). On June 4, 2009, plaintiff received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 26-83). On July 16, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 118-20). On November 25, 2009, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

On January 29, 2010, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claim for SSI benefits. The four issues raised by plaintiff are as follows:

1.    The ALJ's decision is not supported by substantial evidence because he failed to give proper weight to the findings and opinions of plaintiff's physicians and because he did not review all the medical evidence;

2.    The ALJ's decision is not supported by substantial evidence because the ALJ failed to properly follow 20 C.F.R. § 416.929 and applicable case law in assessing plaintiff's credibility;

3.    The ALJ's finding that plaintiff retained the RFC for a limited range of sedentary work is not supported by substantial evidence; and

4.    The ALJ's finding that plaintiff was capable of performing a substantial number of jobs existing in the regional economy is not supported by substantial evidence.

(Statement of Errors, Plf. Brief at iii, docket # 9).  Plaintiff's arguments are based on evidence that she never presented to the ALJ before he entered his decision.  Such evidence can only be considered in the context of a request for remand to the Commissioner under sentence six of 42 U.S.C. § 405(g).  Upon review, I  recommend that plaintiff's request for remand under sentence six of section 405(g) be denied.  I further recommend that the Commissioner's decision be affirmed.

### **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).  The scope of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the

-2-

evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).  "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ."  42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006).  "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . .  This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference."  *Buxton*, 246 F.3d at 772-73.  "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently."  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ.").  "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff had not engaged in substantial gainful activity on or after March 20, 2007.  (A.R. 13).  Plaintiff had the severe impairments of "degenerative disc disease with a minor L5-S1 disc bulge and polyneuropathy."  (A.R. 13).  Plaintiff did not have an impairment or

combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 14). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of sedentary work:

> Claimant has the residual functional capacity to perform a reduced range of sedentary work (20 CFR 416.967(a)). She can lift up to 10 pounds occasionally; stand/walk 2 hours and sit for up to 6 hours an 8-hour workday, with normal breaks; but never climb ladders, ropes, or scaffolds; [and] avoiding concentrated exposure to extreme cold and heat.

(A.R. 15). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. He also discounted some of the limitations imposed by one of her doctors, Dr. Christensen.

> Claimant testified that even with medication her feet are always numb, burning, or tingling. She said she has to wear four or five pair of socks a day because she cannot have her feet touch the carpet or be exposed to the air. She must lie on her side with a pillow between her legs to keep her feet from touching when she sleeps. She further reported that she has low back pain that comes and goes. She estimated that she can stand no more than six to 10 minutes and cannot even walk one block. She said that alternating between sitting and standing increases her pain level such that she must lie down, which, she claims, also hurts.

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could possibly cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment.

> Claimant acknowledged at the hearing that she chose to be a stay-at-home mother. She related that recently she has been unable to do things at home because of her pain and other symptoms.

> Significant inconsistencies exist regarding claimant's allegations and the objective evidence of record. These inconsistencies render the claimant's testimony less than credible.

> Claimant has complained of pain and shocks "like a bolt of electricity." But physical examinations of August 2006, November 2006, December 2006, and March 2007, were essentially normal. Of interest, claimant screamed with pain upon a lumbar examination in August 2006, but this behavior was not recorded in any subsequent examinations of claimant's back. In contrast to the extreme pain behavior during the August 2006

-4-

examination, claimant had a negative straight leg raising test bilaterally. (Exhibits 2F, 3F, 9F)[A.R. 239-41, 261-64, 319-21].

Zachary London, MD, the University of Michigan Health Center neurologist, recorded that claimant complained of burning and tingling in the lower extremities below the knee and only episodic shooting pains in the tops of her feet and tips of her toes (Exhibits 15F, 17F)[A.R. 366-75, 394-96]. Notably, her description to Dr. London is not what she has alleged at other times, including at the hearing.

Claimant stood and sat down often throughout the hearing, but she did not show any apparent distress in her facial expression or physical presentation.

Claimant testified that she uses a cane to walk. She also said she uses the store's mobile cart when she goes grocery shopping. Nevertheless, she acknowledged that even though she has debilitating leg numbness and pain, she can drive an automobile. More significantly, it does not appear that any treating medical source ever prescribed the cane. Dr. London relates only that claimant reported using one (Exhibit 17F/l)[A.R. 394]. Although claimant says she wears multiple socks, there is no medical reason documented in the medical evidence for this need for the socks.

Claimant has displayed highly unusual and inconsistent responses to sensory testing. In March 2007, she expressed having extreme pain with even the slightest touch over the plantar or dorsal surfaces of her feet and toes. Nonetheless, she appeared to have normal lower extremity muscle strength and knee and ankle jerk reflexes (Exhibit 9F/4)[A.R. 320]. Dr. London noted claimant's report of position sense impairment at the great toes, but normal at the ankles. Dr. London further said claimant guessed incorrectly when he moved her great toes (Exhibit 17F/2)[A.R. 395]. While the University of Michigan Medical Center testing established a diagnosis of small-fiber polyneuropathy (likely related to impaired glucose tolerance), Dr. London opined that there was no evidence of radiculopathy or myelopathy. The doctor recommended only that claimant continue with her medications, follow a diabetic diet, and increase her daily and aerobic exercise. The doctor also determined that a new MRI was not required (Exhibit 17F/2)[A.R. 395].

Claimant initially admitted she could probably sit during the day (rather than lie down). But upon further questioning she said she could not sit; she only wished she could sit "in her heart".

Although claimant contends that she must lie down frequently during the day, this contention is unsupported by the objective medical evidence. InterCare Community Health Network progress notes establish that claimant's low back condition is essentially stable (Exhibit 16F/5, 6)[A.R. 381-82]. The MRI revealed only minimal degenerative changes. While claimant has neuropathy involving her lower extremities, a relationship has not been established for the need to lie down frequently for pain and other symptom relief. As will

be discussed below, Dr. Christensen estimated that in an eight-hour workday claimant would need to lie down four to eight times for a total of two to four hours, yet the doctor cited no objective findings in support of this opinion. It appears that this limitation is based solely upon claimant's subjective complaints. Moreover, claimant's statements in Exhibits 3E [A.R. 154-61] and 7E [A.R. 182-89] concerning her ability to do some meal preparation, dish washing, housework, caring for the needs of her children and herself, and television watching suggest that she does not need to lie down as extensively as she has alleged.

Although claimant said that her concentration and comprehension are not good, her depression constitutes only a slight impairment. She can do activities such as driving an automobile and watching television. Of interest, she initially admitted that she could watch television but then, after reflecting on her testimony, said she had issues with concentrating to watch television because of pain and depression.

Claimant said she takes MS Contin, Vicodin, and Motrin for pain (Exhibit 12E and Testimony)[A.R. 208]. Dr. Christensen reported that claimant has been prescribed MS Contin, Vicodin, Topamax, Neurontin, and Ibuprofen for pain; Cymbalta (Duloxetine) for depression and pain; and Docusate (Doc-Q-lace) for the side effects of the pain medicine; Prilosec for her stomach; Flexeril as a muscle relaxant; and Zolpidem for sleep (Exhibit 20F)[A.R. 415]. In January 2009, Dr. London, the neurological specialist, endorsed that claimant could have adequate symptom relief with appropriate medication therapy, a diabetic diet, and an increase in her daily and aerobic exercising (Exhibit 17F/2)[A.R. 395].

It appears that with conservative treatment consisting of medication usage, a healthy diet, and exercising, claimant may adequately control her symptoms. Notably, Dr. Christensen has not said that claimant has any side effects from her medication. At Exhibit 20F/3 [A.R. 417], he has only acknowledged that narcotic pain medicines can impair judgment or make a person drowsy during the day (Exhibit 20F/3)[A.R. 417]. Moreover, Dr. Christensen said the side effects of claimant's pain medication are countered by another medication. There is no suggestion that claimant has such debilitating medication side effects that she is impaired in performing work activities.

Dr. Christensen opined that claimant could lift 10 pounds [occasionally] and less than five pounds frequently; stand or walk two hours of an eight-hour workday, with normal breaks; and sit for 10 or 15 minutes before having to get up and change position. In a somewhat contradictory manner, the doctor would restrict claimant to being on her feet more than five minutes and said she would have to take frequent rest breaks throughout the day. The doctor estimated that in an eight-hour workday claimant would need to lie down four to eight times for a total of two to four hours. The doctor further limited claimant in repetitive lifting, bending, twisting, and working around machinery or heights. Even with these restrictions, the doctor then surmised that claimant would be capable of doing very light duties and simple work such as office-type work (Exhibit 20F/[3][A.R. 417].

The doctor's comments concerning claimant's ability to sit and the need to lie down frequently are not consistent with his objective observations in Exhibit 16F [A.R. 377-92] of the sensation abnormalities in claimant's legs and feet. As mentioned above, some of the restrictions are in conflict with other limitations. It appears that many of the limitations are a mere regurgitation of claimant's subjective complaints. The opined limitations are also inconsistent with the activities claimant acknowledges performing in Exhibits 3E and 7E [A.R. 154-61, 182-89]. Of the contrary, Dr. London, a neurological specialist, placed no limitations upon claimant and instead recommended that she increase her daily and aerobic exercising. In view of the objective medical findings, the inconsistencies cited, and Dr. London's comments, I afford neither controlling nor significant weight to the opinions of Dr. Christensen.

A State agency medical consultant opined in May 2007 that on a physical basis claimant was limited to a reduced range of light work (Exhibit 10F)[A.R. 340-47]. Based upon the medical evidence subsequent to the State agency analysis (particularly the medical reports from Dr. London), I am persuaded that claimant is more limited in standing and walking than determined by the State agency consultant. Therefore, I discount the State agency medical consultant's opinion. Although a State agency physician assessed in November 2006 that claimant had limitations in standing, walking, and lifting more than 10 pounds (Exhibit 5F)[A.R. 279-86], medical reports subsequent to that assessment also render portions of that determination no longer pertinent.

In November 2006, a State agency psychologist determined that claimant did not have a severe mental impairment (Exhibit 4F)[A.R. 265-78]. While the State agency reviewer assessed the claimant had mild restriction in activities of daily living and mild difficulty maintaining concentration, persistence or pace, as discussed above, the totality of the evidence of record supports a conclusion that the claimant has *no* significant limitation in these functional areas. Thus, the reviewer's opinion in the Psychiatric Review Technique Form is given limited weight.

I carefully considered the objective medical findings, claimant's treatment and medication history, her written statements of those activities which she is able to perform, and Dr. London's comments. It is credible that the claimant has some limitation in lifting, standing, and walking. But I find claimant is at least capable of performing a reduced range of sedentary work. She can lift up to 10 pounds occasionally; stand or walk two hours and sit for up to six hours of an eight-hour workday, with normal breaks; and never climb ladders, ropes, or scaffolds. In view of her statements concerning intolerance to extremes of temperature, and affording claimant every benefit of a doubt, I determine that she must also avoid concentrated exposure to extreme cold and extreme heat.

(A.R. 15-18). Plaintiff had no past relevant work. (A.R. 18). Plaintiff was 44 years old on her

alleged onset of disability and she was 46 years old as of the date of the ALJ's decision. Thus, at all

times relevant to her claim for SSI benefits, plaintiff was classified as a younger individual.  (A.R. 18).  Plaintiff has a ninth grade education and is able to communicate in English.  (A.R. 18).  The ALJ found that the transferability of jobs skills was not material because plaintiff lacks past relevant work.  (A.R. 18).  The ALJ then turned to the testimony of a vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 23,500 jobs in the State of Michigan that the hypothetical person would be capable of performing.  (A.R. 80-81).  The ALJ found that this constituted a significant number of jobs.  Using Rules 201.24 and 201.18 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled.  (A.R. 19-20).

## 1.

Plaintiff's arguments are based on evidence that was never presented to the ALJ.  (Plf. Brief at 1, 3, 4, 12, 19; Reply Brief at 3-4).  This is patently improper.  It is clearly established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review.  This court must base its review of the ALJ's decision upon the administrative record presented to the ALJ.  The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ.  *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we

may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ.").  The court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Cline*, 96 F.3d at 148.

Exhibits 21F through 24F were not part of the record plaintiff presented to the ALJ. These exhibits were filed after the ALJ's July 16, 2009 decision.  (A.R. 4).  Plaintiff argues that she filed this evidence "on June 5, 2008, prior to the hearing."  (Plf. Brief at 1 n.1).  She states that she "received a confirmation on June 4, 2008 showing receipt of eight pages of documents.  The transmission form from Plaintiff's office indicates that the documents sent were Dr. London's office records."  (Reply Brief at 4 n.1).  It is well established that statements appearing in a party's briefs are not evidence.[1]  *See Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006).  There is no evidence supporting plaintiff's argument that Exhibits 21F through 24F were submitted to the ALJ before he entered his decision.

Exhibits 21F through 24F can only be considered in the context of a motion for a remand to the Commissioner under sentence six of 42 U.S.C. § 405(g).  The last sentence of

_____

[1]I assume that counsel's arguments are not made in an effort to mislead the court.  Plaintiff had significant incentive to keep the information in Exhibits 21F through 24F regarding her opiate addiction and history of alcohol abuse from the ALJ.  (A.R. 428, 507, 526, 533, 536, 542, 566, 571, 573, 636, 641).  Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction.  *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Monateri v. Commissioner*, No. 09-4524, 2011 WL 3510026, at * 6 (6th Cir. Aug. 11, 2011).  The claimant bears the burden of demonstrating that drug and alcohol addiction is not a contributing factor to her disability.  *See Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010); *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *see also Harlin v. Astrue*, 424 F. App'x 564, 567 (7th Cir. 2011); *Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004).

plaintiff's reply brief contains a request for remand, which is indulgently construed as a motion for remand under sentence six of section 405(g). (Reply Brief at 4). "A district court's authority to remand a case for further administrative proceedings is found in 42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence she now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. All the proffered records dated before July 16, 2009, are not new because they were created before the ALJ's decision. *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483-84. The only new evidence is the RFC questionnaire completed by Dr. London (A.R. 419-20) and his letter regarding an August 19, 2009 examination (A.R. 421-22).

Plaintiff has not shown good cause. The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Ferguson*, 628

-10-

F.3d at 276.  Plaintiff has not addressed, much less carried her burden.  Plaintiff's bare assertion that

she submitted Exhibits 21F through 24F at an earlier date does not suffice.  The transcript of the June

4, 2009 hearing reveals that the ALJ gave plaintiff's attorney a more than adequate opportunity to

correct any problem with the exhibits:

ALJ:     Thank you, Mr. Morris.  I'm aware of the exhibits through 19F, which are all admitted into evidence.  Is there anything else for my consideration today?

ATTY:    No sir.  I'm just pulling up my disk and well, we did send a couple of RFCs.  Oh it looks like 19F is maybe the unsigned RFC from Dr. Christ[e]ns[e]n.  Yes.  And yesterday we [INAUDIBLE] the signed.  So they're -- that should be in the system, but it's not on the exhibit file.

ALJ:     Okay.  And I'm noticing that two exhibits came in since I reviewed this file, so let me take a moment.  I didn't notice that until just now.  14E and 19F both came in since I looked at this file, so okay.  And you said that you were sending a signed copy of the statement from Peter Christ[e]ns[e]n?

ATTY:    Yes, and it's --

ALJ:     Okay.

ATTY:    -- identical except he filled in the blank that -- with that -- regarding that one medicine I wasn't able to --

ALJ:     Oh, I see.

ATTY:    -- identify, page one --

ALJ:     I see.

ATTY:    -- he mentioned the medication and that is Docusate, D-o-c-u-s-a-t-e.

ALJ:     Okay.  And then he signed and dated I take it on the back page?

ATTY:    Correct.

ATTY:    And that'll probably come in -- they don't want me to label these in the electronic file, but it'll probably be 20F I imagine.  Anyhow, 19F which is signed and the first part is filled in as it -- when it comes in, assuming it's in

-11-

the state that you said it is and I have no reason to believe it wouldn't be, would be admitted and considered as well.
(Exhibits through 20F, previously identified, were received into evidence and made part of the record thereof.)

ALJ:          Anything else for my consideration?

ATTY:         No further evidence.

(A.R. 29-30).  The record reflects that counsel made the ALJ aware of medical evidence only through Exhibit 20F.  Plaintiff is bound by the acts and omissions of her chosen legal representative.  *See Kellum v. Commissioner*, 295 F. App'x 47, 50 (6th Cir. 2008); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962); *Zabala v. Astrue*, 595 F.3d 402, 408-09 (2d Cir. 2010).  Plaintiff has not established that Exhibits 21F through 24F were presented to the ALJ, nor has she shown good cause for the failure to submit Exhibits 21F through 24F before the ALJ entered his decision.

Finally, in order to establish materiality, plaintiff must show that the introduction of the new evidence would have reasonably persuaded the Commissioner to reach a different conclusion.  *See Ferguson*, 628 F.3d at 276.  On August 19, 2009, plaintiff appeared at Dr. London's office wearing five socks on each foot.  (A.R. 422).  Dr. London noted that plaintiff's feet and lower legs were warmer than her upper legs.  She had decreased temperature sensation to mid shin and decreased vibration sensation distally.   Her strength was "5 out of 5 throughout the lower extremities."  (A.R. 422).  Her  deep tendon reflexes were 2+ and symmetric.  She displayed an antalgic gait and walked with a cane.  (A.R. 422).  Dr. London offered a diagnosis of "lower extremity allodynia[2] and sensory loss and a small fiber polyneuropathy which is either idiopathic or related to impaired glucose tolerance."  (A.R. 422).  He noted that the ALJ had denied plaintiff's

_____

[2]Allodynia is defined as "pain resulting from a non-noxious stimulus to normal skin." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 52 (31st ed. 2007).

application for SSI benefits (A.R. 421), then remarked that small fiber neuropathies can be very disabling. (A.R. 422). Dr. London completed an August 19, 2009 physical capacities questionnaire expressing opinions that plaintiff would need to lie down every hour for pain relief and could not work. (A.R. 419-20). Dr. London's opinions on the issues of whether plaintiff was disabled, her RFC, and the credibility of plaintiff's subjective pain complaints would not have been entitled to any particular weight because they are all administrative issues reserved to the Commissioner. 20 C.F.R. § 416.927(e); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009). The proffered records from Dr. London would not have reasonably persuaded the Commissioner to have found that plaintiff was disabled on or before July 16, 2009.

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. I recommend that plaintiff's request for a sentence six remand be denied. Plaintiff's arguments must be evaluated on the record presented to the ALJ.

**2.**

Plaintiff argues that the ALJ failed to give adequate weight to the opinions of a treating physician, Peter Christensen, D.O. (Plf. Brief at 10-13; Reply Brief at 3). Dr. Christensen is plaintiff's treating family physician. (A.R. 77). He began treating plaintiff in May 2007, about two months after she filed her application for SSI benefits. (A.R. 415). On May 29, 2009, he gave a statement in support of plaintiff's claim for benefits. (A.R. 415-18). He diagnosed plaintiff as having small fiber peripheral neuropathy, chronic lumbar back pain, and some depression. (A.R. 415). He expressed an opinion that plaintiff's pain complaints were consistent with his diagnosis. (A.R. 416). He offered an opinion that plaintiff retained the RFC to lift ten pounds occasionally and

-13-

five pounds frequently, walk less than two hours in an eight hour workday, and could only sit for ten or fifteen minutes before she would need to get up and change positions.  (A.R. 416).  Dr. Christensen asserted that plaintiff "would need to take frequent rest breaks throughout the day," including a "need to lie down to take some of the pain off her feet and her back."  (A.R. 417).  He stated that plaintiff would need to lie down "a total of two to four hours" out of an eight-hour workday.  (A.R. 417).  Dr. Christensen suggested additional restrictions regarding repetitive motion and noted that there were potential side effects from plaintiff's medications:

> Q:   Are there any other limitations that you would put on her, such as in regard to twisting or bending?
>
> A:   She'd be fairly limited with the repetitive motion of lifting, bending, twisting, that type of motion.  Her work environment would be fairly restricted according to what medication she's on, if she's going to be around machinery or heights, or things like that, so it would be limited to very light duties, simple work, maybe even office type work.
>
> Q:   In regard to medications, you mentioned not being around machinery or heights, can you comment on the specific side effects of the medications?
>
> A:   Narcotic pain medicines, even if you've been on them for a long time, can impair your judgment or reaction time, can make you drowsy during the day.  This would probably be the main side [e]ffects the medicine would have.

(A.R. 417).  The ALJ found that Dr. Christensen's extremely restrictive assessment of plaintiff's RFC appeared to be based on a regurgitation of plaintiff's subjective complaints rather than objective evidence, was inconsistent with plaintiff's activities such as driving a car, and was inconsistent with the opinions expressed by other physicians.  (A.R. 17-18).

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.  20 C.F.R. § 416.927(e)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).  A treating physician's opinion that a patient is

disabled is not entitled to any special significance. *See* 20 C.F.R. § 416.927(e)(1); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2); *see Allen v. Commissioner*, 561 F.3d at 652.

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).  A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2).  The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773.  An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x

-15-

802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 416.927(d);  *Martin v. Commissioner*, 170 F. App'x  369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 652 F.3d 653, 659-61 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

Dr. Christensen's opinions on the issues of disability, RFC, and credibility were not entitled to any particular weight, because these are administrative issues reserved to the Commissioner. 20 C.F.R. § 416.927(e); *Allen v. Commissioner*, 561 F.3d at 652.  Dr. Christensen's opinions on plaintiff's limitations were not well supported by objective evidence and were not entitled to controlling weight.  The ALJ complied with the procedural requirement of providing

-16-

"good reasons" for the limited weight he gave to Dr. Christensen's opinions. The physician's opinions were based on his assigning full credibility to his patient's subjective complaints rather than objective test results. His findings were contradicted by the findings of other physicians and plaintiff's own descriptions of her activities. The ALJ is responsible for making the factual finding regarding the claimant's credibility, not the treating physician. *See Allen v. Commissioner*, 561 F.3d at 652; *see also Ferguson v. Commissioner*, 628 F.3d at 274. I find no violation of the treating physician rule. This aspect of the ALJ's opinion is supported by more than substantial evidence and the ALJ complied with the procedural requirement of providing "good reasons" for the weight he gave to Dr. Christensen's opinions.

### 3.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he "failed to properly follow 20 C.F.R. § 416.929 and applicable case law in assessing Ms. McDonald's credibility." (Plf. Brief at 13-17). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See, e.g.*, *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528. The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a

claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *see White v. Commissioner*, 572 F.3d at 287.

The ALJ provided a very lengthy and detailed discussion of the medical evidence, plaintiff's subjective complaints, and the reasons why the ALJ found that plaintiff's testimony was not fully credible. (A.R. 15-17). The ALJ "considered all [plaintiff's] symptoms and the extent to which they [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929 and SSRs 96-4p and 96-7p." (A.R. 15). The ALJ found that plaintiff's daily activities undercut her testimony that she had greater functional limitations. (A.R. 16-17). *See Walters v. Commissioner*, 127 F.3d at 532; *Blacha v. Secretary of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Perschka v. Commissioner*, 411 F. App'x 781, 787 (6th Cir. 2010). The ALJ noted that plaintiff displayed "highly unusual and inconsistent responses to sensory testing." (A.R. 16). He summarized

-18-

plaintiff's medications and noted that she took the laxative Docusate[3] for the only reported side-effect from her medications.  (A.R. 17, 208).  The ALJ considered plaintiff's testimony regarding measures she took to relieve her pain such as lying down, using a cane, and wearing four or five layers of socks.  I find that the ALJ's credibility finding is supported by more than substantial evidence and that he gave a more than adequate explanation why he found that plaintiff's testimony was not fully credible.  *See Rogers v. Commissioner*, 486 F.3d 234, 247-49 (6th Cir. 2007).

**4.**

Plaintiff argues that the ALJ was biased against her because he "failed to address [her] demeanor at [the] hearing:"

> Finally, in his credibility findings, the ALJ stated, "Claimant stood and sat down often throughout the hearing, but she did not show any apparent distress in her facial expression or her presentation."  (Tr. 6).  That is not supported by the record.  She alternated standing and sitting due to pain and was anxious, tearful and stressed.  She sobbed during the hearing. The ALJ even *stopped the hearing*.  (Tr. 72).  The claimant was clearly under acute mental and physical distress.  His bias is apparent: "claimant has a great deal of unusual and non-anatomical complaints that are not substantiated by the objective medical findings . . . and he could not account "for the somewhat bizarre nature of her alleged symptoms."  (Tr. 14). The ALJ obviously was pre-disposed to disbelief.  The ALJ should have discussed her demeanor at the hearing before finding that she was not credible.

(Plf. Brief at 17).  Plaintiff cites no legal authority in support of this argument.[4]  Perfunctory arguments are deemed waived.  *See Geboy v. Brigano*, 489  F.3d 752, 767 (6th Cir. 2007); *see also*

---

[3]PHYSICIAN'S DESK REFERENCE, 1121 (65th ed. 2011).

[4]It is well established that the ALJ cannot rely *solely* upon his observations at the hearing in resolving a claimant's subjective complaints.  *See Weaver v. Secretary of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983).  However, it is equally well established that an ALJ "may distrust a claimant's allegations of disabling symptomology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."  *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990).

*Taylor v. McGee*, 649 F3d 446, 452 (6th Cir. 2010); *Anthony v. Astrue*, 266 F. App'x 451, 458 (6th Cir. 2008).  Assuming the issue had not been waived, it is patently meritless.

   The ALJ is presumed to have exercised his powers with honesty and integrity, and the plaintiff has the burden of overcoming the presumption of impartiality "with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Commissioner*, 108 F. App'x 358, 364 (6th Cir. 2004) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982), and *Navistar Int'l Transp. Corp v. EPA*, 921 F.2d 1339, 1360 (6th Cir. 1991)); *see Bailey v. Commissioner*, 413 F. App'x 853, 856 (6th Cir. 2011) ("We presume that judicial and quasijudicial officers, including ALJs, carry out their duties fairly and impartially.").  Plaintiff has the burden of providing "convincing evidence that a risk of actual bias or prejudgment is present." *See Bailey*, 413 F. App'x at 856; *see Collier*, 108 F. App'x at 364.  Finally, for the alleged bias to be disqualifying, it must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see Miller v. Barnhart*, 211 F. App'x 303, 305 n.1 (5th Cir. 2006).  "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Carrelli v. Commissioner*, 390 F. App'x 429, 436-37 (6th Cir. 2010); *see Perschka v. Commissioner*, 411 F. App'x 781, 788 (6th Cir. 2010) ("An adverse ruling alone is not enough to support a finding of bias.").  "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are insufficient to establish bias.  *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

   Plaintiff's claim of bias is based on her disagreement with the ALJ's observations regarding her facial expression and physical presentation at the hearing: "Claimant stood up and

down throughout the hearing, but she did not show any apparent distress in her facial expression or physical presentation." (A.R. 16).  Nothing before the court establishes that the ALJ's observations were inaccurate.  The transcript indicates that plaintiff cried during the hearing.  (A.R. 38, 72).  This is evidence that plaintiff cried, but it is not evidence that the ALJ was biased.  I find no evidence that the ALJ was biased against plaintiff, much less the convincing evidence of actual bias that is necessary to overcome the presumption of impartiality.

**5.**

Plaintiff argues that the ALJ's factual finding regarding her RFC is not supported by substantial evidence because the ALJ "did not consider" her need for a cane and did not include adequate restrictions based on her depression.  (Plf. Brief at 17-20; Reply Brief at 1-3).  These arguments are meritless.

The ALJ asked plaintiff whether the cane she was using had been prescribed by a physician.  He received an ambiguous response suggesting that plaintiff's cane, like her habit of wearing five pairs of socks, was a self-initiated comfort measure:

Q    Right.  Has the -- you have a cane?

A    Yes.

Q    Has that been prescribed by any doctor?

A    I believe it was Dr. Fletcher, but I'm going to go more with the socks and the comfort of my slippers with my own comfort, you know.  I use it for comfort.  I don't know that -- I don't remember that it was prescribed to me, but I know just like doubling up my socks and such --

Q    Okay.

A    -- I pretty much brought that on for myself as far as comfort.

-21-

Q     Okay.

A     Like I can't start the shower and get in like everybody else with the empty flooring of the shower because the coolness of the -- it just radiates like a shock.

(A.R. 42-43). The records from Dr. Fletcher that plaintiff presented to the ALJ[5] (A.R. 222-29) did not include a prescription for cane use. The ALJ was correct when he observed that no treating physician had prescribed cane use. (A.R. 16).

Plaintiff's argument that the RFC finding should have included depression-based restrictions fares no better. RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 416.945(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). Plaintiff had no history of psychiatric hospitalization or need for extensive treatment.

In California, fourteen months before her alleged onset of disability, plaintiff reported to Dr. Fletcher that she was experiencing significant stress related to her scheduled February 2006 move back to Michigan. Dr. Fletcher offered a diagnosis of depression. (A.R. 222). On November 20, 2006, a state agency physician completed a psychiatric review technique form (PRTF) in connection with plaintiff's earlier claim for SSI benefits. Based on plaintiff's statements that she had memory loss and was taking medication for depression, PRTF included "mild" difficulty maintaining concentration, persistence, and pace in his assessment. (A.R. 265-77). The state agency physician noted that plaintiff was independent in her activities of daily living and had no severe problems with memory or depression. (A.R. 277).

Here, plaintiff claimed a March 20, 2007 onset of disability. There is no record of treatment for depression between plaintiff's alleged onset of disability and June 10, 2008. On June

---

[5]Dr. Fletcher's records consisted of progress notes for the period of February 2005 through February 2006, filed in support of an earlier application for SSI benefits. (A.R. 222-29).

11, 2008, plaintiff appeared at Family and Children Services in Kalamazoo, Michigan on a referral from an unspecified friend. She stated that her husband was on SSI and that she had applied for SSI benefits. Plaintiff reported that she felt overwhelmed and alone, had chronic pain, and was unable to keep up with her 8-year-old daughter. (A.R. 358-59). A social worker offered a diagnosis of depression. (A.R. 364). A June 25, 2008 counseling discharge summary indicates that plaintiff attended two counseling sessions. (A.R. 357). It is well established that a social worker is not an acceptable medical source and her opinion was not entitled to any particular weight. *See* 20 C.F.R. § 416.913; *see also Hayes v. Commissioner*, No. 1:09-cv-1107, 2011 WL 2633945, at * 6 (W.D. Mich. June 15, 2011) (collecting cases).

Dr. Christensen's progress notes for August 29 (A.R. 385), September 30 (A.R. 383), and October 28, 2008 (A.R. 381), record plaintiff's depression complaints. On August 29, 2008, plaintiff reported to Dr. Christensen that she had stopped taking Cymbalta[6] for a number of months and had not experienced problems. (A.R. 385). Dr. Christensen noted that plaintiff was oriented in all three spheres. Plaintiff's affect, mood, judgment, insight, and memory were normal. (A.R. 386). The September 30, 2008 examination returned identical results. (A.R. 382). On October 28, 2008, Dr. Christensen described plaintiff as "slightly depressed" (A.R. 382) and indicated that her condition was "stable." (A.R. 381). On May 29, 2009, Dr. Christensen stated that plaintiff had "some depression." (A.R. 415). The ALJ's findings that plaintiff retained the residual functional capacity for a limited range of sedentary work and lacked significant functional restrictions from her depression are supported by more than substantial evidence. (A.R. 15).

_____

[6]Cymbalta is used in the treatment of depressive disorders and in the management of neuropathic pain associated with diabetic peripheral neuropathy. PHYSICIAN'S DESK REFERENCE at 1760.

**6.**

Plaintiff argues that the ALJ's finding at step 5 of the sequential analysis is not supported by substantial evidence because the hypothetical question the ALJ posed to the VE "did not include all Plaintiff's documented impairments" and "[t]he VE testified that the need to lie down four to eight times during the day would preclude all work." (Plf. Brief at 17-20; Reply Brief at 1-3). This argument is a reformulation of plaintiff's attacks on the ALJ's finding regarding the weight given to Dr. Christensen's opinions and the ALJ's factual findings regarding plaintiff's credibility and RFC. A VE's testimony in response to a hypothetical question accurately reflecting a claimant's impairments provides substantial evidence supporting the Commissioner's decision. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). A hypothetical question is not required to list the claimant's medical conditions, but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Parks v. Social Security Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) ("Hypothetical questions [] need only incorporate those limitations which the ALJ has accepted as credible."); *Carrelli v. Commissioner*, 390 F. App'x at 438 ("[I]t is 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'") (quoting *Casey*, 987 F.2d at 1235). The VE does not determine a claimant's medical restrictions or how they impact on the claimant's residual functional capacity -- that is the ALJ's job. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1987). The ALJ, having found that plaintiff's subjective complaints were not fully credible, was not bound in any way by a VE's

response to a hypothetical question from the plaintiff's attorney incorporating a contrary assumption. I find that the hypothetical question posed to the VE was adequate, and that the VE's testimony in response provides substantial evidence supporting the ALJ's decision.

### Recommended Disposition

For the reasons set forth herein, I recommend that plaintiff's request to remand this matter to the Commissioner under sentence six of 42 U.S.C. § 405(g) be denied. I further recommend that the Commissioner's decision be affirmed.

Dated:   November 21, 2011          /s/  Joseph G. Scoville
                                    United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).